(Hamiton County Common Pleas.)

DORA L. HELMIG, individually and as guardian of William Helmig, v. JOHN C. MEYER et al.

(1). An explanatory clause in a will, containing clear and distinct words of perpetuity, will control doubtful language used in another clause, especially if the latter attempts to create entailments or limitations.

(2). An executor obtains no title and has no power to convey real estate unless there are words expressly granting him title, and then only for the purpose of realizing money to pay debts, or as a trustee to carry out designated trusts.

(3). Partition may be had where the life tenant consents to a sale free of the life estate and it appear to the court that a sale will not be prejudicial to the interests of the remainder men.

---

In partition.
PFLEGER, J.

Mary A. Meyer died testate in July, 1897, possessed of personal property valued at over $20,000 and real estate worth perhaps as much. She left two children—a son, John F. Meyer, and a daughter named Dora L. Helmig, John. F. Meyer died November 10, 18991, leaving a widow, Harriet Meyer, and six children, three of age and three minors. Dora L. Helmig, the daughter, still survives, and has living one child, named William Helmig, a minor twenty years of age.

Mary A. Meyer left a will, item 2 of which reads as follows:

"Item 2. * * * I give, devise and bequeath to my son, John Frederick Meyer, and his children, the one undivided half of the real estate and personal property forever, and to my daughter, Dora Meyer, who is now

married to F. W. Helmig, her child or children, the one undivided half of the real estate, personal property and effects that may be then left and unexpended, and the same to be divided between my two children, John Frederick Meyer and Dora Meyer (now Dora Helmig) and their child or children.''

In item 7 she provided that—

"In case of the death of my daughter or child or children, then in that case all of my bequests made by me to my daughter Dora and her child or children, all of the bequests so made shall be and I hereby give and devise and bequeath all of the real estate and personal property devised and bequeathed as hereinbefore given to my daughter, Dora Meyer, and child or children, to the children of my son, John Frederick Meyer, who are then living and their heirs forever.''

In item 5 she states that her daughter has always been faithful to her father and mother, and that therefore she gives and devises "to her during her natural life all as set forth hereinbefore, and after her death the same to be given to her child or children forever.''

In item 6 she states that in view of the disgaceful conduct of F. W. Helmig, the husband of her daughter, Dora, she prays the court that ''if there should be one or more children then living and not of lawful age, and he then claiming to be appointed as guardian of the estate of my daughter's child or children, that he shall give a good and sufficient bond as required by law.''

In item 8 she expresses an intent to transfer all her stocks, effects and claims before her death to her son, John Frederick Meyer. "his heirs and assigns forever, and to my daughter, Dora Meyer, and her child or children by way of a bill of sale'' * * *.

In item 9 she directs that her son be appointed executor, and authorizes her son, ''John Frederick Meyer, to transfer by deed or otherwise all of the real estate given by me to my daughter, Dora Meyer, wife of F. W. Helmig, during her natural lifetime, and after her death to her child or children and their heirs forever.''

In item 10 she prays that her two children immediately after her death meet by themselves and divide between themselves all of their real and personal property which had been given them by her as thereinbefore set forth.

In item 11 she authorizes her son to transfer to her daughter ''during her natural lifetime and to her child or children forever all of the real estate and personal property free, clear and unencumbered either by deed or otherwise as the same has been provided hereinbefore as if I was and would be present.''

The plaintiffs, Dora L. Helmig and her son, William, claim that under this will Dora L. Helmig, the daughter, took a life estate and the plaintiff, William Helmig, a fee simple of the undivided one-half of the entire estate, real and personal, and they ask partition thereof.

The defendants claim that the devise to the son, John Frederick Meyer, under item 2, is an absolute fee simple to the other undivided one-half of the entire estate, real and personal, and that the son having died intestate this one-half descended to his six children subject to the dower right of Harriet Meyer, the widow of John F. Meyer; and they also ask partition. The defendants also claim that the other one-half of the estate goes to Dora L. Helmig for life, then to William Helmig for life, and under item 7 of the will, after the death of both, in fee simple to the surviving children of John Frederick Meyer.

The defendant, Daniel Dreyfoos, administrator de bonis non of the testatrix, Mary A. Meyer, denies the title of the plaintiff as claimed by them, asks for a construction of the will, and insists that under items 9 and 11 the title to the daughter's share, of all the property, real and personal, passed to him as executor and trustee, and therefore whatever the interests may be as between the daughter and her children, and the son and his children, as to this particular one-half, no partition could be made.

It is admitted by defendants' counsel that the division of the estate in item 2 as between the son and daughter is half and half, and a construction on that point is for that reason unnecessary.

It is admitted by plaintiff's counsel that Dora L. Helmig is not entitled to a fee simple, but to a life estate only.

The issue is therefore narrowed to two questions: (1) Does the plaintiff, William Helmig, take only a life estate in the one-half given to his mother, or does he take a fee simple title? (2) Does the executor take any title in trust to this one-half share to the daughter?

Item 2 giving the property to ''Dora, her child or children,'' standing alone, would give the daughter Dora, an absolute fee simple title. With item 5, ''to her during her natural life,'' ''and after her death the same to be given to her child or children forever,'' would, under sec. 5968. Rev. Stat., excluding the rule in Shelley's case, give her a life estate and vest in her son, William, a remainder in fee simple forever.

Item 2, together with item 7, which provides that in case of the death of the daughter or her child or children (and it is admitted by both counsel that under 2 Ohio St., 241, the conjunc-

tion used in the words "daughter or child or cildren" shall read "daughter and her child or children") the estate sh uld pass to the then living children of John Frederick Meyer, would pass a life estate to Dora Helmig, another life estate to her son William, and the fee simple in remainder to the children of John Frederick Meyer, provided, of course, that the words "in case of the death of my daughter or child or children" refer to the inevitable death of both the daughter and her children, and not to such death preceding the death of the testatrix.

It is true the will has verbiage and is bunglingly drawn. Taking the whole by its four corners, is it the intention of the testatrix to create a life estate in the child of Dora or a fee simple? The division contemplated in items 3 and 10 between the son and daughter throws no light upon the question, because the division was to be made "as hereinbefore set forth," and a division by giving to the daughter and her son a life estate and to the children of John Frederick a remainder, is not inconsistent therewith. Nor does item 6 aid us, in which she requests that F. W. Helmig be required to give bond as guardian of the estate after the death of Dora if one or more of the children be then living and not of legal age, because he may be guardian of a life estate, or the income thereof, as well as of a fee simple; nor item 8, evidencing her intention to transfer her personalty before her death to her son, "his heirs and assigns forever," and to her daughter "and her child or children," especially if taken in connection with the other clauses in the will. Standing alone, item 8 seems to differentiate the respective titles to the son and daughter by the use of the different words. These expressions are both words of perpetuity with reference to the personalty.

Item 5 expressed her appreciation of the faithful services rendered by the daughter, and because of such faithfulness she gave all of the property therein set forth to Dora during her natural life, and after her death "to her child or children forever." In item 9 she directed the son as executor, to deed to the daughter the real estate "during her natural lifetime, and after her death to her child or children, and their heirs forever." Item 1 is practically a repetition of item 9, and therein she directed her executor to transfer the real and personal property to Dora "during her natural lifetime, and to her child or children forever."

In items 5, 9 and 11 there are, therefore, strong words of perpetuity wholly inconsistent with the theory that William Helmig took a life estate. There is nothing in the entire will to indicate that the daughter was not as highly esteemed as the son, or, indeed, entitled to less. The usual precautions taken against a thriftless son-in-law are apparent. This may account for the life estate only to the daughter.

Plaintiff's counsel cite over fifty authorities, and defendants quite a number. I have examined those specially cited on both sides, excepting the ones not applicable, copied from Bates' Digest, on the different constructions of wills. Defendants cited Bates v. Zinsmeister, 26 Ohio St., 461, wherein the court ordered the estate to pass to brothers and sisters under a devise to the daughter for life and after her death to her child, providing such child without having issue died under twenty-one, then to the brothers and sisters.

In Weston v. Weston, 38 Ohio St., 473 an estate was held to pass to the widow under a devise to the child, and in case of the death of the child without issue to the heirs.

Collins v. Collins, 40 Ohio St., 353, holds that when an interest is conveyed in clear and decisive terms, it can not be taken away by subsequent words or clauses not as clear and decisive.

Rhodes v. Weldy, 46 Ohio St., 234, holds that where some words or phrases are used more than once, they receive the same construction where they are of doubtful meaning as where they are clear, unless the connection plainly calls for a different construction.

Johnson v. Johnson, 51 Ohio St., 446, was a case of a devise to a wife of all real as well as personal property, with power to dispose of it, but any unconsumed property to be divided between the brothers and sisters of the testator; and it was held to convey a life estate only in both real and personal property, and the vested remainder in the brothers and sisters.

In Durfee v. McNeill, 58 Ohio St., 238, a devise to two children, and on either dying without heirs then all to the survivor, was held to vest in each an estate in fee simple determinable upon the death of the other without children, although the one died leaving a husband surviving her, and the word "heirs" was construed to mean "children."

It is unnecessary to cite many of the elementary rules of construction applicable hereto. The whole instrument should be construed as one, and effect given to every part if possible. Decker v. Decker, 3 Ohio, 166. The policy of Ohio, which is unfavorable to entails, is also unfavorable to provisions tying up property, and will not by liberal construction create limitations. Bierce v. Bierce, 41 Ohio St., 256. A will generally speaks from the time of the death of the testator, and not from the date of

its execution. Board of Education v. Ladd, 26 Ohio St., 210.

There are two cases which to my mind seem to be peculiarly applicable to the case at bar. The first is Baker v. McGrew, 41 Ohio St., 113 In that case there was a devise of part of a residue to two grandchildren, and if both died without issue the property coming to them should be given to other grandchildren. It was held that the title should not be held contingent unless unavoidable, and that an absolute gift is not to be qualified by a remainder or an executory devise without clear intent; and that, therefore, the contingency referred to the time of the testatrix's death, and if the two grandchildren survived her, their shares became absolute, and on their death without issue passed to their heirs and not to the other grandchildren.

The other case is that of Patterson v. Earhart, 29 Bull., 313. This is an able opinion rendered by Judge Bates. A devise was made absolute to A, with a limitation over that if she dies then to her child, or if the child die then to her surviving children. The limitation over on the death of the devisee without other words was here construed to mean death in the testatrix's life time. In this case there was no expression of avoiding an objectionable son-in-law, but the intent of the testator was held to be to prevent a lapsing of a share into an intestate residuum. It is said that to refer to death in the words "if he dies" or "in case he dies" as relating to some uncertan period or as contingent, when the event is inevitable, is absurd. Many authorities are there cited as showing that if any equivocal language appears it must be held to relate to the death of the testator. In this case there were no words of perpetuity, such as "heirs" or "forever."

If it is permissible, then, in the case at bar to apply this construction to item 7, and that the words "in case of the death of my daughter and child or children," in order to carry out the intention should be interpreted as if followed by the words "before my death," no other evidence need be sought for to support the contention that William Helmig took a fee simple subject to his mother's life estate.

And it is argued with some force that if the intention of the testatrix was to give the estate to the surviving children of John Frederick Meyer after the death of Dora Meyer and her son, William, the words "upon the death of my daughter and her children" should have been used, and the words "children forever" in item 5 and item 11, and the words "her children and their heirs forever" in item 9, should have been omitted.

And again, under another rule of construction, that where a clause is clear and distinct it should control over a clause or phrase less clear and decisive, item 5 is explanatory of all the other items as to the exact nature of the interest of Dora and her son. The testatrix says: "Because of her faithfulness I give her "during her natural life all as set forth herein above, and after her death the same to be given to her child or children forever.'" The word "forever" seems to have been designedly used; and with greater force are the words "to her child or children and their heirs forever" in item 9. The instrument as a whole seems to breathe the desire of the testatrix to divide the shares between the son and daughter, and to limit the estate of the daughter for life merely because of the apprehension regarding her son-in-law. In order to hold that William Helmig has only a life estate and that the surviving children of John Frederick Meyer have the remainder, the court would be compelled to reject entirely the clear words of perpetuity reiterated in items 5, 9 and 11, and accept the doubtful phraseology in item 7. This, however, can not be done.

2. The quetion whether, under item 9 and 11, in which the testatrix authorizes her son, as "executor" and "administrator," to make transfers to Dora and to her child or children, passes the title interests of the daugter to the executor in trust, and that he must convey is not so difficult of solution.

It is a well-known principle of law that an executor, as such, dose not take title to real estate. He may, as such "executor," be in fact a trustee to carry out certain trusts, or to convey for the purpose of realizing money to pay debts. He is authorized by statute to pass the title to real estate to purchasers. If there is an object to be attained, the transfer to the trustee may be supported; but there are in this case no debts to be paid, and there is no express language of title to the executor, no purpose is to be subserved, no reason is assigned why he should take the title. The gift to Dora Helmig and her children is made directly to her and her children, and not through a trustee. Under item 10 she wants this division made immediately after her death. As she had ample personal property to pay her debts, there was no object in delaying a transfer. It is apparent that the testatrix or the scrivener erroneously assumed that it was necessary for the executor to give Dora Helmig and her children a deed to perfect the title. The executor therefore took no title to the share coming to Dora L. Helmig or her son.

3. Another question is raised by defendants' counsel. He claims that in order to entitle plaintiffs to a partition,

plaintiffs, or one of them, must own an interest for life as well as remainder. Patterson v. Earnhart seems to hold that the owner of a fee subject to an executory devise over on his own death without issue, may have partition. So it has been held in Tabler v. Wiseman, 2 Ohio St., 207, that neither reversioners nor remaindermen can have partition, because partition under the statute by its very nature affects possession of real property.

Our circuit court has held in 1 C. C. 39, reviewing the authorities, that if the life tenant consent to a partition or sale free from the life estate and to take the value of the same in money, and if it appears to the court that it will not be to the prejudice of the other parties in interest, a partition and sale may be had.

This is the position of Mrs. Helmig and her son's. It is admitted by defendants counsel that the children of John Frederick Meyer have prayed for partition and will ask for the same without regard to the conclusion of the court as to the share coming to Mrs. Helmig and her children.

The conclusion of the court, therefore, is that under item 2 of the will the children of John Frederick Meyer take a fee simple title of the undivided one-half of all the personalty and all the real estate, subject to the dower of the widow, Harriet Meyer. That Dora L. Helmig takes a life estate in the other one-half of the real and personal property, and her son, William Helmig, a vested remainder in fee simple to such other undivided one-half of the real and personal property, subject to the life estate of Dora L. Helmig. That Daniel Dreyfoos takes no title, either as trustee or as administrator de bonis non, to any of the real estate; and that plaintiffs jointly are entitled to have partition made of the premises, and decree will be entered accordingly.

Theodore Horstman for Plaintiff.
Geo. W. Harding, for Defendants.